UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| ANDREW MCKEVITZ, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 3:18-CV-00131-HBG |
| CAPITAL ALLIANCE GROUP,<br>CAPITAL ALLIANCE PARTNERS, LLC,<br>NARIN CHARAN and MARK MENDOZA, | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(c), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties, for all further proceedings, including entry of judgment [Doc. 31].

Now before the Court is Defendants' Motion to Transfer to the Southern District of California Pursuant to 28 U.S.C. § 1404 Due to "Exclusive and Continuing Jurisdiction" from Prior Class Action Settlement ("Motion to Transfer") [Doc. 23]. Specifically, Defendants assert that pursuant to 28 U.S.C. § 1404(a), this Court should transfer this proceeding to the Southern District of California. Plaintiff filed a Response [Doc. 25], opposing the Motion, and Defendants filed a Reply [Doc. 26]. Defendants also filed an Amended Motion to Transfer [Doc. 35-1], which the Court has also considered.[1] The Motion is ripe for adjudication. Accordingly, for the reasons further explained below, the Court **GRANTS** Defendants' Motion to Transfer [**Doc. 23**].

---

[1] The Court observes that Plaintiff consented to the filing of Defendants' Amended Motion to Transfer. [Doc. 35].

## I. BACKGROUND

Plaintiff filed a Complaint [Doc. 1] against Capital Alliance Group, Capital Alliance Partners, LLC, Narin Charanvattanakit ("Charan"), and Mark Mendoza on March 26, 2018, requesting compensatory and punitive damages for alleged violations of the Telephone Consumer Protection Act ("TCPA"). In addition, Plaintiff alleges a claim for defamation against Defendant Charan.

Specifically, in the Complaint, Plaintiff states that Defendants negligently and/or willfully contacted him twenty-three (23) times through "robocalls" (calls using an automatic telephone-dialing system without prior express consent) and/or other means that violated Plaintiff's privacy rights. [Doc. 1 at ¶¶ 8-9]. Plaintiff states that he did not provide consent to receive such calls, which were made by Defendants in order to promote the sale of lending services, and that he registered his cell phone number on the National Do-Not Call List. [*Id.* at ¶¶ 16, 29].

The Complaint states that Defendants Capital Alliance Group and Charan were parties to a class action settlement agreement, *Bee, Denning, Inc., v. Capital Alliance Group,* No. 3:13-CV-2654-BAS-WVG (S.D. Cal. Nov. 18, 2016) (*"Bee* Settlement"), which was entered by the United States District Court for the Southern District of California. [*Id.* at ¶ 34]. The Complaint states that pursuant to the *Bee* Settlement, Defendants Capital Alliance Group and Charan were ordered to take certain actions in order to comply with the TCPA, and they were prohibited from taking other actions, such as not calling cellular telephones prior to receiving express permission of the intended recipient. [*Id.* at ¶¶ 34-35]. The Complaint alleges that Defendants continued to solicit Plaintiff for over a year after the California court ordered them to adhere to reasonable practices and procedures in order to eliminate illegal telephone solicitations. [*Id.*]. The Complaint states that Plaintiff and his counsel have asked Defendants on several occasions, without success, to

provide documentation of their telephone solicitation practices and procedures. [*Id.* at ¶ 36]. The Complaint contends that Defendants have ignored the specific requirements in the *Bee* Settlement. [*Id.*].

In addition, the Complaint alleges that Defendant Charan posted a libelous statement on Plaintiff's counsel's Facebook page on January 4, 2018. [*Id.* at ¶¶ 38-40]. The Complaint avers that the nature of the statement disregards the truth by attacking Plaintiff's character with the intention to lower his estimation to the community and deterring third persons from associating or transacting with him. [*Id*. at ¶ 40]. The Complaint further alleges the statement is of a harassing nature and indicates Defendant Charan's desire to inflict future harm. [*Id*.].

## II. POSITIONS OF THE PARTIES

Defendants filed a Motion to Transfer [Doc. 23], and later, filed an Amended Motion to Transfer [Doc. 35-1], pursuant to 28 U.S.C. § 1404(a), requesting that this Court transfer this action to the United States District Court for the Southern District of California due to the similarity in facts with respect to the previously adjudicated class action suit. Defendants assert that this action could have been brought in the Southern District of California and that justice and judicial economy are served by transferring this case. Defendants also argue that the parties' and witnesses' convenience is served by transferring this case.

Plaintiff filed a Response [Doc. 25], arguing that there are no common operative facts between the instant matter and the *Bee* case. Plaintiff further asserts that he made no claims in his Complaint for any relief under the *Bee* Settlement and that the reference to the *Bee* Settlement was simply to show that Defendants were continuing to perform illegal telemarketing practices in spite of the order by the Southern District of California Court. Plaintiff contends that venue is proper in this Court and that Defendants have substantial connections to Tennessee. Finally, Plaintiff

3

argues that the instant Complaint includes defendants that are not part of the *Bee* Settlement and a claim for defamation against Defendant Charan.

Defendants filed a Reply [Doc. 35], asserting that when a pending case alleges violations of a class action settlement under which a different court retains jurisdiction, the presumption of transfer is hard to overcome. Defendants state that the factors that the Court should consider weigh in favor of transferring this case.

### III. STANDARD OF REVIEW

Defendants' request to transfer is governed by 28 U.S.C. § 1404(a). Specifically, 28 U.S.C. § 1404(a) provides, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." A district court retains broad discretion in considering a motion to transfer under § 1404(a). *Cobble v. 20/20 Communs., Inc*., No. 2:17-cv-53, 2018 WL 1026272, at *5 (E.D. Tenn. Feb. 23, 2018) (*citing Stewart Org., Inc. v. Ricoh Corp*., 487 U.S. 22, 29 (1988)). The purpose of § 1404(a) is "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal quotations omitted).

In determining whether transfer of venue is appropriate under § 1404(a), the Court must consider a three-part analysis.[2] *Cincinnati Ins. Co. v. O'Leary Paint Co*., 676 F. Supp. 2d 623, 630 (W.D. Mich. 2009) (explaining the factors a court should consider). First, the Court must decide whether the action could be properly brought in the proposed transferee district, on both jurisdictional and proper venue considerations. Next, the Court must determine whether the interests of justice would be better served through transfer to the proposed forum. Finally, the

---

[2] The Court observes that some courts conduct this analysis in two-steps. *Cobble,* 2018 WL 1026272, at *5

Court should consider all of the relevant public and private factors, including the convenience of witnesses and potential witnesses, in determining whether the proposed forum is more convenient. *Moses v. Bus. Card Exp., Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991) (internal quotations omitted); *see also United States v. Cinemark USA, Inc.*, 66 F. Supp. 2d 881, 887 (N.D. Ohio 1999) (noting the relevant considerations under § 1404(a) "include the plaintiff's choice of forum, location of documents, convenience of witnesses, possibility of prejudice in either forum, and the practical problems associated with trying the case expeditiously and inexpensively").

The movant bears the burden of establishing both the existence of a proper alternative forum and that the "convenience of the parties and witnesses, and the interest of justice[,] warrant transfer." *Cobble*, 2018 WL 1026272, at *5 (citing *McKee Foods Kingman v. Kellogg Co.*, 474 F. Supp. 2d 934, 936 (E.D. Tenn. 2006)). In weighing these relevant factors and the interests of each party, the "plaintiff's choice of forum, though generally given deference, may be overcome by an appropriate showing by the defendant." *Boys v. Mass Mutual Life Ins. Co.*, No. 2:12-CV-445, 2013 WL 3834010, at *2 (E.D. Tenn. July 24, 2013) (citing *ImagePoint Inc. v. Keyser Industries, Inc.,* No. 3:04-CV-119, 2005 WL 1242067, at *3 (E.D. Tenn. May 25, 2005)). Therefore, a "showing that the interests of justice would be better served by transfer may alone be sufficient to overcome the plaintiff's choice of forum." *Id.* at *2 (other citations omitted).

As mentioned above, it is Defendants' burden to establish that transferring the case is appropriate. *Id.* "In attempting to meet this burden, it is not enough to show that transfer would merely shift the inconvenience from one party to another." *Id.*

With the above guidance in mind, the Court will now turn to the present matter.

## IV. ANALYSIS

The Court has considered the parties' filings in this matter, and for the reasons further explained below, the Court will **GRANT** Defendants' Motion to Transfer [**Doc. 23**].

As summarized above, Defendants argue that the Court should transfer Plaintiff's claims to the Southern District of California under 28 U.S.C. § 1404(a), in light of the holding in the *Bee* Settlement, whereby the district court "reserve[d] exclusive and continuing jurisdiction and venue." [Doc. 23-1 at 8]. By way of background, the *Bee* Settlement involved a class action lawsuit wherein plaintiffs alleged that Capital Alliance Group and Charan violated the TCPA by making unsolicited advertisements by telephone and facsimile machine with several different business names. [*Id.* at 6]. The parties entered into a class action settlement agreement, which the Southern District of California approved on November 18, 2016. [*Id.*]. The Final Approval Order states as follows:

> That this Court reserves exclusive and continuing jurisdiction and venue with respect to the consummation, implementation, enforcement, construction, interpretation, performance, and administration of the Settlement Agreement.

[Doc. 23-1 at 8].

Plaintiff distinguishes this particular case from the *Bee* Settlement, claiming that the two actions do not share common facts or law. Given that Defendants' Motion was filed pursuant to § 1404(a), the Court will examine the three aforementioned factors in order.

### A. Could this action be brought in the Southern District of California?

As an initial matter, the Court observes that it does not appear Plaintiff disputes that this action could have been brought in the Southern District of California. In any event, however, the Court finds that this action could be brought in the Southern District of California.

Congress generally employs the expression, where a suit "may be brought" to indicate the federal districts in which venue is proper. *See, e.g.*, 28 U.S.C. § 1391(b) (general venue statute specifying where a "civil action may be brought"); J. Oakley, ALI, Fed. Judicial Code Rev. Project 253-90 (2004) (listing special venue statutes, many with similar language). In a civil action, venue is appropriate in "a judicial district in which any defendant resides." 28 U.S.C § 1391(b)(1). A corporate defendant resides in "any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to civil action in question." 28 U.S.C. § 1391(c)(2).

Recently, the Supreme Court reaffirmed that a corporate defendant is typically subject to general personal jurisdiction "at home" where the corporation's place of incorporation and its principal place of business are located. *BNSF Railway Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (citing *Daimler AG v. Bauman*, 571 U.S. 117, 118 (2014); *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 924 (2011)).

Applying the facts in this action, the parties do not dispute that Defendants Capital Alliance Group's and Capital Alliance Partners, LLC's principal places of business are located in Santa Ana, California and that they are not registered to do business in Tennessee. Defendant Charan and Mendoza are officers and shareholders of Capital Alliance Group and Capital Alliance Partners, LLC. [Doc. 18]. Accordingly, the Southern District of California does have personal jurisdiction over Defendants, and the Court finds that this action could have been brought in the Southern District of California. *See Boys*, 2013 WL 3834010, at *3 (explaining that New Jersey has personal jurisdiction over defendant because defendant is registered in New Jersey and does in fact do business there).

## B. Whether transfer would promote the interest of justice?

Defendants argue that the Southern District of California expressly retained jurisdiction over the claims that are raised by Plaintiff. Defendants assert that the Southern District of California has more than three years of experience adjudicating the claims related to the class action settlement. Plaintiff asserts that this venue is convenient for parties and witnesses and is in the best interest of justice. Plaintiff contends that he has not made any claims of relief pursuant to the *Bee* Settlement and that his claims do not share common facts or law with the claims asserted in the class action lawsuit.

In *Boys*, the court stated that "the consideration of the interests of justice — considerations of judicial economy included — may be *determinative* in deciding whether to grant or deny transfer." *Boys*, 2013 WL 3834010, at *3 (citing *Jabo's Pharmacy, Inc. v. Cephalon, Inc.,* No. 2:09-CV-289, 2010 WL 3851966, at *2 (E.D. Tenn. Sept. 27, 2010)) (emphasis in *Boys*). In balancing the interests of justice, courts should consider "ensuring speedy trials, trying related litigation together, and having a judge who is familiar with the applicable law try the case." *Id.* at *2 *(*citing *Heller Fin., Inc. v. Midwhey Powder Co., Inc.,* 883 F.2d 1286, 1293 (7th Cir. 1989)).

"[R]elated litigation in the transferee court is "a significant factor in considering the interest of justice factor." *Id.* at *3 (quoting *Proffitt v. Abbott Labs.,* No. 2:08-CV-151, 2010 WL 4401367, at *7 (E.D. Tenn. Sept. 23, 2008)) (other quotations omitted). Further, "litigation of related claims in the same tribunal is strongly favored because it facilitates efficient, economical and expeditious pre-trial proceedings and discovery and avoids [duplicative] litigation and inconsistent results." *Id.* at *3 (quoting *Durham Prods., Inc. v. Sterling Film Portfolio*, *Ltd*., 537 F. Supp. 1241, 1243 (S.D.N.Y 1982) (internal quotation marks omitted)).

As explained above, Plaintiff filed a claim pursuant to the TCPA because he received a number of unsolicited robocalls from Defendants. In the Complaint, Plaintiff alleges that Defendants continued to solicit him for over a year after the California court ordered them to adhere to reasonable practices and procedures in order to eliminate illegal telephone solicitations. Plaintiff avers that Defendants have ignored the specific requirements outlined in the *Bee* Settlement.

The Court finds that this case is related to the litigation in the Southern District of California as Plaintiff has explicitly alleged that Defendants violated the *Bee* Settlement by contacting him. *See* [Doc. 1 at ¶ 36] (alleging that Defendants have ignored the specific requirements in the *Bee* Settlement). The Court acknowledges that Plaintiff has not sought relief pursuant to the *Bee* Settlement, but Plaintiff's Complaint is based on similar allegations that have already been litigated by the Southern District of California—that is, whether Defendants' practice of using robocalls violates the TCPA. The Court further notes that the *Bee* Settlement was approved by the Southern District of California in 2016. At that point, the court invested over three years handling the matter related to the class settlement. In its Final Approval Order, the court expressly declared its intent to retain jurisdiction, stating as follows: "[T]his Court reserves exclusive and continuing jurisdiction and venue with respect to the consummation, implantation, enforcement, construction, interpretation, performance and administration of the Settlement Agreement." [Doc. 23-1 at 8]. The Court finds that the Southern District of California is better suited to determine whether Defendants are violating the *Bee* Settlement, as Plaintiff has alleged.

Plaintiff argues that the facts alleged herein are different than the facts that were alleged in the California case. For instance, Plaintiff states that he received auto-dialer pre-recorded messages from various telephone numbers other than the telephone number (1-888-364-6330) and

the facsimile communications at issue in the *Bee* Settlement. Further, Plaintiff asserts that the time encapsulated by the period recognized by the *Bee* Settlement overlaps with only a portion of the dates presented in his action. Finally, Plaintiff states that Defendants Capital Alliance Partners, LLC and Mendoza are not parties to the *Bee* Settlement.[3]

The Court finds Plaintiff's arguments non-starters. Plaintiff has failed to distinguish his claim or present evidence to overcome the interest that the Southern District of California has in handling the portion of this case governed by the TCPA and whether Defendants' actions violated the requirements of the *Bee* Settlement. The Court finds that the cause of action is most appropriately handled by the Southern District of California, in light of the continuing jurisdiction over and fluency with the related claims of the settlement.

Plaintiff has also alleged a defamation claim against Defendant Charan. Specifically, Plaintiff alleges that Defendant Charan published a defamatory statement about him on his counsel's Facebook page. Plaintiff states that his attorney is based in Knoxville and certified to practice in Tennessee. Plaintiff, however, does not explain why the Southern District of California should not hear his defamation claim. As mentioned above, § 1404(a) allows the Court to transfer an action "if the transfer is warranted by the convenience of the parties and witnesses and promotes the interest of justice." *Rader v. Calloway Labs., Inc.*, No. CV 15-48-ART, 2015 WL 13675381, at *4 (E.D. Ky. Aug. 3, 2015) (*Van Dusen*, 376 U.S. at 616). The Court has already found that the Southern District of California has invested resources as it relates to Plaintiff's claim that Defendants violated the TCPA. Plaintiff has specifically alleged that Defendants did not abide by the requirements of the *Bee* Settlement. The Court further finds that it is more convenient to litigate

---

[3] The Court notes that Capital Alliance Group and Capital Alliance Partners, LLC, share the same office, and Defendants Mendoza and Charan are shareholders and officers of both companies.

one action in one forum, rather than splitting the case between two courts. *Rader*, 2015 WL 13675381, at *4.[4] Accordingly, the Court finds that it is within the interest of justice to transfer, based on judicial economy and the advantages of having the Southern District of California determine whether Defendants' actions are inconsistent with the *Bee* Settlement as Plaintiff has alleged.

C. **Whether Transfer Would Serve the Parties' and the Witnesses' Convenience**

Plaintiff argues that Defendants' actions occurred in Tennessee. Specifically, Plaintiff asserts that Defendants called Plaintiff's Tennessee-based cellular telephone for a period of over two years and that Defendant Charan posted defamatory statements about Plaintiff on Plaintiff's counsel's Facebook page. Plaintiff asserts that his attorney is licensed in Tennessee and practices in Knoxville.

In the final step of the § 1404(a) analysis, the Court should examine the public-interest factors. Plaintiff's choice of forum is "generally given deference" but "may be overcome by an appropriate showing by the defendant." *Boys*, 2013 WL 3834010 at *2 (*citing ImagePoint Inc.*, 2005 WL 1242067, at *3). A district court should also consider the following factors when considering a motion to transfer,:

> (1) the plaintiff's choice of forum; (2) the convenience of witnesses; (3) the location of all relevant documents and the relative ease of access to sources of proof; (4) the convenience of parties; (5) the locus of operative facts; (6) the availability of process to compel the attendance of unwilling witnesses; and (7) the relative means of the parties.

---

[4] The Court notes that pursuant to Federal Rule of Civil Procedure 21, the Court is permitted to sever the claims and then may transfer one action while retaining jurisdiction over the other. *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1519 (10th Cir. 1991). No party, however, has requested that the claims be severed, and courts have noted that severance and transfer are only "appropriate on rare occasions." *Id.* (citing 15 *Federal Practice and Procedure* § 3846 at 363 n. 19; 3A *Moore's Federal Practice* ¶ 21.05[2] at 43–44).

*Freeman v. MML Bay State Life Ins. Co.*, No. 3:10-CV-66 JCH, 2010 WL 8961440, at *4 (D. Conn. July 15, 2010) (other quotations omitted). As mentioned above, the "convenience of the witnesses, particularly nonparty witnesses, is often of paramount importance." *Boys*, 2013 WL 3834010, at *5 (citing *Applied Energy Techs., Inc. v. Solar Liberty Energy Sys., Inc.,* No. 09-CV-11959, 2009 WL 2777079, at *6 (E.D. Mich. Aug. 27, 2009)).

Accordingly, the Court has considered such factors, and the Court finds that they weigh in favor of transferring this case. This controversy is more local to the Southern District of California than this District. The Court agrees with Defendants that nearly all of the witnesses to the alleged misconduct and the evidence thereto, which includes relevant documentation and sources of proof, are located in California. Further, as Defendants argued, the locus of operative facts is located in Santa Ana, California, where the Defendants' principle places of business are located. *See* [Doc. 35-1]. While Plaintiff argues that the facts are connected to the Knoxville/Maryville area, he has not provided the Court with any description of proof that would not be easily transferable. *See Boys*, 2013 WL 3834010, at *5. While the Plaintiff's choice of forum remains fixed to the Eastern District of Tennessee, this Court sees no implications to any apparent administrative difficulties, such as court congestion. These considerations, combined with the Court's analysis above regarding the interests of justice, indicate that this case lacks any sufficient circumstances that would prevent transfer.

## V. CONCLUSION

For the reasons explained above, the Court hereby **GRANTS** the Defendants' Motion to Transfer Venue [**Doc. 23**]. The Clerk of Court is **DIRECTED** to **TRANSFER** this entire action to the United States District Court for the Southern District of California, pursuant to 28 U.S.C. § 1404(a).

ORDER ACCORDINGLY.

_____
United States Magistrate Judge